RAMÓN BERRÍOS MIRANDA, demandante y apelante, *v.* ASOCIACIÓN DE EMPLEADOS DEL GOBIERNO DE PUERTO RICO, demandada y apelada; ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor.

*Número:* AP- 62-51          *Resuelto:* 27 de junio de 1963

### SENTENCIA

Por los motivos consignados en la opinión emitida hoy en el recurso Núm. 12,732, de *Félix C. Hernández Montero* v. *Antonio Cuevas Viret, etc.*, se revoca la sentencia final apelada, dictada por la Sala de San Juan del Tribunal Superior, con fecha 11 de mayo de 1961, debiendo devolverse el caso al tribunal de instancia para ulteriores procedimientos ante dicho tribunal compatibles con la citada opinión.

Así lo pronunció y manda el Tribunal y firma el señor Juez Presidente.

(Fdo.)   LUIS NEGRÓN FERNÁNDEZ
*Juez Presidente*

Certifico:
(Fdo.)   MERCEDES L. SOMOHANO
*Secretaria Interina*

### EN MOCIÓN DE RECONSIDERACIÓN

San Juan, Puerto Rico, a 12 de noviembre de 1963

*Luis E. García Benítez,* abogado de la Asociación de Empleados del Gobierno de Puerto Rico; *J. B. Fernández Badillo,* Procurador General, y *Nilita Vientós Gastón, Procurador General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El 27 de junio de 1963 el Tribunal en Pleno dispuso de este caso mediante la siguiente:

### "SENTENCIA

Por los motivos consignados en la opinión emitida hoy en el recurso Núm. 12,732, de *Félix C. Hernández Montero* v. *Antonio Cuevas Viret, etc.,** se revoca la sentencia final apelada, dictada por la Sala de San Juan del Tribunal Superior, con fecha 11 de mayo de 1961, debiendo devolverse el caso al tribunal de

---

*88 D.P.R. 785 (1963).

instancia para ulteriores procedimientos ante dicho tribunal compatibles con la citada opinión."

El Procurador General y la Asociación apelada han sometido mociones de reconsideración por separado sosteniendo que los hechos envueltos en el caso de epígrafe son distintos a los surgidos en el de *Hernández Montero,* y que por lo tanto la decisión del caso de *Montero* no debe regir la del presente caso.

En cuando a que existe una diferencia en los hechos, tienen razón el Procurador General y la Asociación. Según los hechos que consideró probados la Sala sentenciadora, el apelante ingresó originalmente en el Cuerpo de la Policía de Puerto Rico el 15 de diciembre de 1941. Fue retirado de dicho Cuerpo el 30 de octubre de 1957 por incapacidad física, previo examen médico practicado por la Policía. El apelante estaba acogido al seguro de la Asociación apelada y al ser retirado del Cuerpo de la Policía solicitó el pago de su seguro y le fue denegado en 20 de febrero de 1958, por entender el médico de la Asociación que el apelante no estaba incapacitado para el desempeño del cargo que tenía en la Policía Estatal.

Así las cosas, el 19 de marzo de 1958 el apelante solicitó reposición en el Cuerpo de la Policía de Puerto Rico y fue readmitido. De nuevo en su cargo, el apelante trató de readquirir su condición de asegurado en la Asociación y ésta le denegó el seguro por razón de incapacidad física. Denegada una reconsideración de dicha negativa a tener el beneficio del seguro interpuso esta acción de *mandamus* en la Sala de San Juan del Tribunal Superior para que se ordenara a la Asociación que lo admitiera como asegurado.

Mientras en el caso de *Montero* se trataba de una persona cubierta por el seguro a quien se le denegó el beneficio del mismo al ser retirado por incapacidad física, en el presente caso se trata de un empleado a quien no se le permite ser asegurado por razón de incapacidad física. En cuanto a los hechos, ahí está la diferencia. En cuanto al derecho, la Sala

sentenciadora actuó en el curso de juicio y denegó la acción del apelante bajo criterios similares a los expuestos en el caso de *Montero*, inspirados esos criterios en el de *Arzola*.([1])

El récord demuestra los siguientes incidentes durante la vista del caso:

[Declara el apelante, Sargento de la Policía Estatal.]

"P. Cuánto tiempo lleva usted trabajando en el Cuerpo de la Policía?

R. Alrededor de veinte años.

P. Usted ingresó originalmente el quince de diciembre del mil novecientos cuarenta y uno?

R. El veinticinco de enero del 1941.

P. Muy bien. Y usted se retiró el treinta de octubre del mil novecientos cincuenta y siete del cuerpo de la policía?

R. Sí, señor.

P. Solicitó usted el seguro de la Asociación de Empleados del Gobierno de Puerto Rico?

R. Al ser pensionado solicité de la Asociación de Empleados el seguro. Fui examinado por el doctor García Cabrera y se denegó el seguro porque no estaba incapacitado.

P. Después de eso solicitó usted reingreso en el cuerpo de la policía?

R. Fui llamado de nuevo el diecinueve de mayo del mil novecientos cincuenta y ocho y solicité reingreso en la Asociación de Empleados y fui examinado por el doctor García Cabrera y no se me aceptó porque estaba incapacitado.

P. Primeramente, usted fue retirado del servicio?

R. Sí, señor.

P. Hizo su solicitud a la Asociación de Empleados?

R. Solicitando el seguro.

P. Y dicha solicitud entonces fue denegada?

R. Porque no estaba incapacitado.

P. Entonces, después de denegada dicha solicitud para cobrar el seguro, usted solicitó el reingreso en el cuerpo de la policía?

R. Sí, señor.

P. Fue otra vez admitido a servicio activo en la policía?

---

(1)*Arzola v. Asoc. Fondo de Ahorro*, 72 D.P.R. 421 (1951).

R. Fui admitido como miembro activo.

P. Después de admitido otra vez a servicio activo en el Departamento de la Policía, usted solicitó reingreso— también en el seguro de la Asociación de Empleados?

R. Como miembro activo de nuevo, y fue denegada por el doctor García Cabrera, porque estaba incapacitado, de acuerdo con un examen que él me hizo.

P. El mismo doctor que le había denegado el seguro encontrándolo capacitado, entonces le negó el reingreso en el plan de seguro porque estaba incapacitado?

R. Sí, señor.

P. Desde la fecha en que usted volvió a cumplir sus deberes en el cuerpo de la policía, ha trabajado usted continuamente con el Departamento de la Policía?

R. Sí, señor.

P. Y está trabajando actualmente?

R. Sí, señor."

Contrainterrogado por el abogado de la Asociación:

"P. Cuándo fue que el doctor García Cabrera le denegó el seguro porque encontró que usted no estaba incapacitado?

R. Me lo denegó al ser yo pensionado.

P. En qué fecha?

R. No le puedo decir la fecha. Yo al retirarme, inmediatamente a la semana, solicité el seguro.

P. Cuándo se retiró?

R. Me retiré en el veintisiete de agosto del mil novecientos cincuenta y siete, creo que fue.

P. E inmediatamente solicitó su incapacidad?

R. El seguro por incapacidad.

P. Que le fue denegado?

R. Sí, señor.

P. Quiere decir que fue un poco después de agosto del mil novecientos cincuenta y siete. Y el doctor García Cabrera encontró que usted no estaba incapacitado?

R. Sí, señor.

P. Y por eso se le denegó el seguro?

R. Sí, señor.

P. Pasó el tiempo y usted, que había cesado en la policía por incapacidad . . .

R. Sí, señor.

P. Fue admitido de nuevo en la policía?

R. Sí, señor.

P. Porque la policía encontró que usted estaba capacitado?

R. Sí, señor.

P. Cuándo fue que ingresó de nuevo por estar capacitado?

R. El diecinueve de mayo del mil novecientos cincuenta y ocho.

P. O sea, menos de un año?

R. Un año ocho meses."

.    .    .    .    .    .    .    .

P. "De todos modos, menos de un año, pero ciertamente varios meses entre una fecha y la otra transurren. Es decir, entre el momento en que la policía lo separa por incapacidad física, a la vez que poco después el doctor García Cabrera le deniega el seguro por no encontrarlo incapacidado dentro de la ley de la Asociación, pasan meses y entonces la policía lo encuentra capacitado, igual que lo había encontrado el doctor García Cabrera y usted ingresa de nuevo?

R. Sí, señor.

P. Y al ingresar de nuevo, entonces usted solicita el reingreso como miembro en el fondo de seguro de la Asociación. Lo examina el doctor García Cabrera y encuentra entonces, meses después de su examen anterior, encuentra que usted no estaba incapacitado, digo, que no estaba capacitado para ingresar en el fondo del seguro?

R. Sí, señor.

A. Nada más."

El apelante presentó el testimonio del Sr. Rafael A. Serra, Jefe de la División de Retiro de la Oficina de Personal del Gobierno y con él identificó todos los informes médicos bajo su custodia oficial como récords del Sistema de Retiro del Gobierno relacionados con el retiro y el reingreso del apelante en el Cuerpo de la Policía. Al ser ofrecidos dichos informes en evidencia se opuso el abogado de la Asociación así:

"Más bien objetamos la admisibilidad de estos documentos. Lo que haya firmado médicos extraños a la Asociación, no puede servir de base para la discusión, para la decisión de si la Asociación debe o no admitir el ingreso de un empleado en el Fondo del

Seguro. El Sistema de Fondo del Seguro lo que concede es una oportunidad de contratación entre la Asociación y el empleado, sujeto al dictamen del médico de la Asociación, en cuanto al estado de salud del empleado. Si el médico de la Asociación dictamina que el empleado no está capacitado, ese es el dictamen que la Asociación *y en su caso la Corte,* debe tomar en consideración para que se admita o no se admita. El Tribunal Supremo de Puerto Rico ha resuelto en otro aspecto del seguro, *pero sobre el mismo punto,* que el juicio que prevalece, conforme a las disposiciones de la ley, a los fines de seguro en relación con empleados y el estado de capacidad del empleado, es el juicio del médico de la Asociación. De manera que lo que hayan opinado otros médicos, bien sean privados o médicos de la institución esta del retiro, no puede en forma alguna servir de base, como cuestión de derecho, para determinar si la Asociación ha actuado legalmente o contra la ley, al denegar el ingreso."

El abogado del apelante discute ampliamente el asunto y llama la atención al Tribunal hacia el hecho de que la ley obliga a la Asociación a adoptar un reglamento o reglas para gobernar sus procedimientos, reglamento éste que nunca había sido adoptado y que no existían normas algunas por las cuales el médico de la Asociación podía guiarse para determinar la admisibilidad o inadmisibilidad de una solicitud en particular, al plan de seguro, teniendo ello el efecto de haberse delegado en un solo médico todo el poder de legislar en relación con las normas del plan de seguro de la Asociación de Empleados del Gobierno. Resolviendo el incidente, dijo el Tribunal:

"Con vista a la declaración del testigo al efecto de que el doctor García Cabrera fue quien lo examinó originalmente para cualificarlo como capacitado, es decir, que no tenía derecho a recibir los beneficios de la pensión, y que el doctor García Cabrera también fue quien lo examinó posteriormente, para entonces afirmar que estaba incapacitado, y entendiendo el tribunal, a la luz del caso resuelto por el Tribunal Supremo, interpretando el alcance del examen médico para disfrutar y en alguna forma tener derecho al seguro o a la pensión, se declara con lugar la objeción y se deniega la admisión de los documentos, *porque no se ha establecido que esos informes hayan sido suscritos por el doctor de la Asociación."*

Después de ulterior discusión volvió a decir la Sala sentenciadora:

"Que no habiendo . . . En primer lugar porque se ha establecido, se ha estado hablando hasta este momento que la persona que examinó a este peticionario en ambos casos fue el doctor García Cabrera y en segundo lugar, porque siendo las normas de lo que es la ley, por lo menos en tanto en cuanto esté vigente la resolución del Tribunal Supremo en el caso en que interpreta esa ley, relativo al informe del médico, como informe sin el cual no se puede entrar en la concesión de una pensión ni una incapacidad, el Tribunal admite que ese es el propósito por el cual lo ha denegado. O sea, sostener en primer lugar, el imperio de la ley y en segundo lugar, *que no se ha conectado el documento con el doctor García Cabrera.*" (Énfasis puesto.)

Denegada la admisión de esos informes médicos el apelante anunció que estaban en Sala para declarar el Dr. Andino y el Dr. Coca Mir, médicos que firmaron los informes. Se le preguntó al Dr. Andino, sentado en la silla de testigos, si había tenido ocasión de examinar al apelante Berríos, a lo que se opuso la Asociación por entender que se tendía a ofrecer el testimonio médico respecto al estado de salud y condición física del apelante por un médico que no era el de la Asociación. Invocó el abogado de la Asociación la disposición de la ley al efecto de que no se debía admitir por la Junta *o los tribunales en su caso* ninguna otra prueba que la específicamente provista por la ley, y manifestó:

"Aceptamos que esta disposición a que nos estamos refiriendo se refiere a la concesión o negativa de concesión del seguro por incapacidad; *que aquí se trata de la admisión o no admisión de ingreso en el seguro. Nosotros sostenemos que el principio es exactamente el mismo.* Que la relación en este caso es exactamente igual que la relación con una compañía de seguros. Que es un acto contractual." (Énfasis puesto.)

La Sala sentenciadora sostuvo la objeción y se negó a admitir el testimonio médico del Dr. Andino sobre el estado de salud del apelante. Permitió, no obstante, que fuera al récord lo que declararía el médico.

El apelante ofreció la declaración del Dr. R. Coca Mir y se reprodujo igual situación de derecho. Ante la objeción de la Asociación, la Sala sentenciadora se negó a admitir dicho testimonio si bien el mismo quedó en récord. Igual situación de derecho ocurrió con la declaración del Dr. Carlos Enrique Beltrán. Igual situación de derecho ocurrió con la declaración del Dr. Arnaldo Palmer, de la Policía, cuyo testimonio no fue admitido por el Tribunal ante la objeción de la Asociación.

Declaró por parte del apelante el Sr. Eleuterio Vega, Secretario Contador de la Asociación y manifestó que podía asegurar que no existía ningún reglamento que rigiera la administración del Sistema del Seguro. Que existía la norma de que una vez devuelto el caso por el médico para ingreso o solicitud de incapacidad, la Junta de Directores escuchaba al doctor y tomaba decisión sobre el caso. Que no había normas o regla escrita o en otra forma en cuanto a qué enfermedad o en cuanto a qué condiciones de cualquier enfermedad podían ser base para el rechazo de una solicitud de ingreso. *Que entendía que eso lo había dejado la Asociación completamente a discreción de su médico.* Que entendía que en algunos casos el Dr. García Cabrera había referido solicitudes a especialistas pero que no había reglamento escrito en que se dispusiera que él estuviera obligado a esos especialistas y que desconocía cuál era la especialidad del Dr. García Cabrera.

El Dr. García Cabrera como testigo del apelante manifestó que la admisión de una persona al seguro estaba relacionada con su trabajo y que al hacer el examen él tomaba en cuenta el cargo que la persona iba a desempeñar en el Gobierno de Puerto Rico; que los requisitos físicos de todos los cargos le eran suministrados por el Departamento correspondiente a donde iría a trabajar el individuo si bien también dijo que él creía que podía determinar que un solicitante estaba incapacitado para desempeñar el cargo a pesar de que la Policía lo encontrara capacitado para el mismo. Luego manifestó que al examinar a un solicitante para ingresar al Plan de Seguro

no se comunicaba con la Policía para determinar si estaba apto o no, y que su determinación era separada y aparte de cualquier determinación que hiciera el Departamento de la Policía y el del Sistema de Retiro. (²)

En el caso de *Montero*, ante, consideramos la Sec. 20, según ha sido enmendada, de la Ley Núm. 52 de 11 de julio de 1921 que creó lo que ahora se conoce como la Asociación de Empleados del Gobierno de Puerto Rico, y que dispone todo lo relacionado con el seguro por muerte e inutilidad física y la manera de conceder sus beneficios. Esa es la sección que reza en cuanto a la determinación de inutilidad física total y permanente, que no deberá admitirse por la Junta de Directores de la Asociación *o por los tribunales en su caso*, ninguna otra prueba que la específicamente provista en dicha Ley, y dicha única prueba resulta ser el dictamen facultativo del médico de la asociación.

El caso de autos está cubierto por una disposición distinta que es la Sec. 25 de la referida Ley, según la misma quedó enmendada por la Ley Núm. 54 de 10 de junio de 1954. La sección primera de la Ley de la Asociación dispone que se crea una institución pública de *carácter compulsorio* para *todos* los empleados y funcionarios públicos permanentes del Gobierno Estadual de Puerto Rico. Expuso el Legislador, entre otros objetivos, que serían sus fines estimular el ahorro entre sus asociados *y asegurarlos contra inutilidad física o muerte*. Estatuye la Sec. 25 que todo funcionario o empleado permanente *que no se hubiere acogido y viniera obligado a acogerse* a los beneficios de la Asociación en virtud de las disposiciones de la Ley, y todo funcionario o empleado permanente de nuevo

---

(²) Los Dres. Andino, Coca Mir y Beltrán dijeron ser especialistas en medicina interna. Según sus declaraciones, creían al apelante capacitado para el cargo que desempeñaba en la Policía. El Dr. Palmer, médico particular de la Policía, declaro que el apelante estaba dentro de las cualificaciones médicas del Cuerpo para ejercer el cargo que tenía.

En este recurso no vamos a dirimir criterios médicos encontrados ni a pasar sobre los méritos de la cuestión, lo cual se dejará para la Sala Sentenciadora.

nombramiento que *viniera igualmente obligado* a hacer su ingreso en la Asociación deberá presentar para dicho ingreso una solicitud dirigida al Presidente de la Junta de Directores acompañada de una fotografía de cuerpo entero, tomada a la fecha de la solicitud, así como también certificación de nacimiento del Registro Demográfico, partida bautismal o en su defecto cualquier otro documento adecuado en ley para probar su edad; y que los funcionarios y empleados que dejaren de llenar estos requisitos se les descontará de su sueldo el por ciento correspondiente para el fondo de ahorro y *no se les contará el tiempo fijado en la ley* para ser acogidos al beneficio del seguro por muerte o inutilidad(*) hasta que hagan solicitud y se resuelva la misma de acuerdo con lo dispuesto; y que mientras permanezcan sin solicitar ingreso para acogerse a todos los beneficios de la Asociación, la Junta de Directores podrá concederles préstamos *en cantidad que no exceda la de sus ahorros y dividendos acumulados*, siendo tales préstamos amortizables por descuentos del sueldo no menor de 3% mensual de la cuantía del préstamo.

Dispone entonces esta Sec. 25 que el Presidente endosará al médico de la Asociación la solicitud y demás documentos mencionados en el párrafo precedente, para que proceda a practicar el examen o exámenes que creyere conveniente hacer al candidato, y dé cuenta a la Junta del resultado de su trabajo. Al recibirse dicho informe la Junta resolverá la petición y comunicará su resolución al solicitante y al departamento concernido disponiendo que se hagan los descuentos correspondientes para el fondo de ahorro y para el seguro si la solicitud del peticionario fuera resuelta favorablemente. *Si se denegara la solicitud el empleado quedará acogido únicamente al beneficio de ahorro y préstamo.*

Se habrá observado ya que la Sec. 25, aplicable en este caso, no contiene disposiciones semejantes a las de la Sec. 20 que discutimos y analizamos en el caso de *Montero*. Sin em-

---

(*) Este término se fija en cinco años.

bargo, la Sala sentenciadora y la propia Asociación, en el curso del juicio asimilaron la situación de este caso como una bajo la Sec. 20. Expresamente así lo hizo constar el abogado de la Asociación y lo aceptó la Sala, según demuestra parte del récord transcrito al principio. Como cuestión de derecho la Sala dio a este caso el mismo tratamiento que el dado al caso de *Montero* bajo la Sec. 20.

El principal argumento de la Asociación apelada ha sido que se trata de un caso igual al de una compañía de seguro privada que tiene la libertad de aceptar o no como asegurado a determinada persona, y que para ello tiene derecho a depender exclusivamente de lo que digan sus propios médicos. Un enfoque objetivo y realista de la situación nos convence que la Asociación apelada no está en lo correcto.

■ La Asociación existe como una entidad creada gubernamentalmente para fines de interés público, como es la protección de nada menos que de los propios empleados gubernamentales. Ni es un negocio privado ni tiene fines de lucro o especulación. El Legislador expresamente manifestó que uno de los fines de la ley es proteger al empleado con *un seguro de muerte y de inutilidad física,* seguro éste que incuestionablemente tiene un costo menor para el empleado que cualquier seguro similar obtenido de una entidad comercial particular. La propia Sec. 25 indica que el empleado debe acogerse al seguro, y demuestra interés en que se acoja como parte de la política pública perseguida. De ahí que hasta cierto punto impone como sanción, para obligarlo a que se acoja prontamente, y hasta que se acoja a dicho seguro, la limitación de su derecho a préstamos y otros beneficios concedidos a los miembros de la Asociación.

Además, si se comparan los beneficios de que puede disfrutar un empleado que forma parte del seguro o ha sido admitido al seguro con los de aquél que no lo ha sido—independientemente del gran beneficio del seguro en sí—es incuestionable

el hecho que todo empleado aspira y desea que se le acepte como un asegurado. ([3])

■ La Sec. 19 de la ley autorizó a la Junta Directiva a dictar las reglas y reglamentos que fueren necesarios para la aplicación de la misma y dichas reglas y reglamentos tendrían fuerza de ley. Según declaró el Sr. Vega, Secretario Contador, no existía reglamento específico sobre la manera de determinar la elegibilidad de un empleado que quisiera acogerse al seguro, excepto lo que dispone la propia Sec. 25. Hay que reconocer que en esta esfera de acción la Asociación merece disfrutar de un amplio margen de criterio, pero es preciso reconocer también que la negativa de admisión de un empleado a los beneficios del seguro no puede ser caprichosa, injustificada o sin que exista una base convincente de razón para ello.

■ Si se considera la posición de desventaja en cuanto al pleno disfrute de todos los beneficios de la Asociación en que está el empleado a quien se le niega ser acogido al seguro en relación con el empleado a quien se admite, una negativa injustificada o irrazonable podría desembocar en una situación de la desigual protección de la ley, ya que incuestionable a la Asociación, por ser criatura legislativa cuyo funcionamiento está específicamente estructurado e intervenido por ley,

---

([3]) Un no asegurado sólo puede hacer:

(1) un préstamo por el monto sólo de sus ahorros y dividendos.

Un asegurado, además de la póliza por unos $7,856.03 por muerte o $7,089.60 por inutilidad física, si de primera categoría, y de $5,261.73 ó $4,758.43, respectivamente, si de segunda categoría, por lo cual sólo paga $6 mensuales en el primer caso ó $3 mensuales en el segundo, puede hacer préstamos:

(1) de emergencia
(2) de sus ahorros y dividendos
(3) de sus ahorros más 30% del sueldo *anual*, sin fiadores
(4) de sus ahorros más 40% del sueldo *anual*, con fiadores y
(5) préstamos hipotecarios.

Si se considera que durante el año 1961–62 se hicieron préstamos por $34,097,871, se calculará la gran importancia que tiene estar admitido al seguro y poder usar el empleado de todos los tipos de préstamos.

le es aplicable la prohibición constitucional en tal sentido como a cualquier otro organismo del Estado.

No insinuamos siquiera, ni se debe tomar como criterio anticipado, que en este caso el apelante fue irrazonablemente excluido del seguro, lo cual se habrá de dilucidar oportunamente. Sólo estamos exponiendo la parte doctrinal envuelta.

■ En vista de nuestra decisión en el caso de *Montero*, habiendo aplicado la Sala sentenciadora en esta situación el mismo criterio de la Sec. 20, la doctrina de *Montero* es aquí también buena. En la esfera administrativa del asunto es explicable que la Asociación tenga predilección por el criterio facultativo de su propio médico y le dé gran peso. Pero tan pronto el asunto salió de dicha esfera administrativa para surgir como un pleito judicial, fue un serio error de la Sala sentenciadora, en justicia a ella guiada por el criterio de *Arzola*, el excluir sistemáticamente toda prueba competente y admisible que tendía a sostener la causa de acción del apelante, privándole de un juicio justo.

*No hay razón para reconsiderar nuestra sentencia de 27 del pasado junio que revocó la dictada en este caso por la Sala sentenciadora y devolvió el asunto para ulteriores procedimientos.**

---

*Nota del Compilador: La sentencia en este caso expresa en parte: "El Juez Asociado Sr. Blanco Lugo concurre en el resultado."