ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| MUNICIPIO DE GUÁNICA Y OTROS<br><br>Apelantes<br><br>v.<br><br>ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelada | KLAN202400062 | Apelación procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Civil Núm.: PO2023CV03331<br><br>Sobre: Sentencia Declaratoria, Injunction Preliminar y Permanente |
|---|---|---|

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 13 de marzo de 2024.

Comparecen el Municipio de Guánica y otros, en adelante el Municipio o el apelante y en conjunto, los apelantes, quienes nos solicitan que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Ponce, en adelante TPI. Mediante la misma, el TPI resolvió que, según el Art. 42 de la Ley Núm. 9-2013, la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, en adelante la AEELA, no está obligada a pagar arbitrios de construcción al Municipio y, también, eximió del pago de los arbitrios a la compañía contratada por la AEELA para realizar los trabajos de demolición.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**-I-**

La AEELA instó una *Demanda* sobre sentencia declaratoria, injunction preliminar y permanente contra los apelantes.[1] Solicitó al TPI que decretara la insistencia del Municipio, en cobrarle los arbitrios municipales, como una violación a los derechos de la apelada y sus socios, por dos razones: (1) deja sin efecto la ley especial que delinea y establece los poderes y facultades de la Asamblea de Delegados de la AEELA, y (2) la legislatura no le ha delegado al Municipio la facultad para imponerle contribuciones. También, solicitó al foro sentenciador que ordenara a los apelantes a no forzar a la apelada a realizar el pago de los arbitrios ni a someterse a un procedimiento administrativo para impugnar el pago; que ordenara al Municipio a emitir una certificación negativa de deuda por concepto de los arbitrios de construcción y; que ordenara a la Oficina de Gerencia de Permisos, a emitir el permiso de demolición. En fin, solicitó la exención del pago de arbitrios municipales, conforme a lo dispuesto en el Art. 42 de la *Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico de 2013*, en adelante la Ley Núm. 9-2013.

Por su parte, el TPI celebró una *Vista en su Fondo*, en la que hizo constar que la AEELA está exenta, por disposición legal, del pago de contribuciones y simplificó la controversia a dilucidar si la exención contributiva se extiende a los contratistas independientes que realizarán los trabajos de demolición, en lo predios que pertenecen a la apelada.[2]

---

[1] Apéndice de la apelada, págs. 1-33.
[2] *Id*, págs. 146-150.

Además, les concedió término a las partes para presentar memorandos de derecho y al Municipio, para contestar la demanda de la AEELA.

Así pues, el Municipio presentó su contestación a la demanda; en síntesis, arguyó que la necesidad y urgencia de la demolición hacen académico el remedio de injunction preliminar y permanente; que es su responsabilidad y deber cobrar los arbitrios por construcción; y que la apelada no adujo causas de acción que justifiquen la concesión de un remedio.[3]

En el término concedido, las partes presentaron sus respectivos memorandos de derecho.[4]

Con el beneficio de la comparecencia de ambas partes, el TPI declaró ha lugar la *Demanda* y emitió una *Sentencia Declaratoria*, en la que estableció que conforme a lo dispuesto en el Art. 42 de la Ley Núm. 9-2013, la AEELA no tiene la obligación de pagar arbitrios de construcción al Municipio y declaró no ha lugar la petición de injunction preliminar y permanente.[5] Del mismo modo, formuló las siguientes determinaciones de hechos:

1. La Asociación es dueña de un edificio denominado Centro Vacacional Playa Santa (CVPS), localizado en el barrio Ensenada de Guánica. El CVPS lo constituye una edificación de 13 pisos que alberga 98 apartamentos para el disfrute de vacaciones de los empleados públicos, sus familiares y la comunidad en general. El complejo operó desde 1982 hasta enero de 2020. Entre finales del 2019 y principios del 2020, una secuencia de más de 2,000 sismos afectó la zona sur de Puerto Rico generando escenas de caos, devastación y destrucción. El CVPS sufrió daño estructural como consecuencia de estos terremotos. Debido a la destrucción y los daños ocasionados por los terremotos, el CVPS quedó inhabitable y fue clausurado, con el fin de garantizar la seguridad de los empleados, los visitantes y la comunidad de Ensenada.

---

[3] *Id.*, págs. 155-161.
[4] Apéndice de los apelantes, págs. 24-70.
[5] *Id.*, págs. 1-21.

2. Ante la severidad de los daños y la peligrosidad que representaba, en reunión extraordinaria celebrada el 24 de septiembre de 2021, la Asamblea de Delegados de la Asociación, autorizó el inicio de los trámites necesarios para la demolición del edificio.

3. Luego de un proceso de subasta formal (SAE-14-23-00), el 12 de mayo de 2023, se adjudicó la buena pro de la subasta para demoler y disponer de los materiales remanentes del Centro Vacacional, mediante el uso de explosivos. La agraciada con la buena pro de la subasta fue la empresa Alpha Demolitions, Inc. Una compañía dedicada al negocio de demoliciones industriales, comerciales, residenciales, demoliciones con métodos mecánicos, demoliciones con uso de explosivos y desmantelamientos en general establecida en Puerto Rico.

4. Mediante reunión ordinaria llevada a cabo el 14 de junio de 2023, el Comité Ejecutivo de la Asociación ratificó la demolición de la Torre del Centro Vacacional de Playa Santa, asignó los fondos necesarios para la adjudicación de la obra para la demolición de la estructura y la disposición de los materiales a Alpha Demolitions.

. . . . . . . .

19. El 12 de octubre de 2023, el licenciado Merle Feliciano comunicó al representante legal de AEELA que la determinación del honorable alcalde del municipio de Guánica era no conceder el certificado de exención solicitado.

[…]

22. El 20 de octubre de 2023, el señor alcalde notificó una comunicación en la que reitera su oposición de no proveer el certificado de exención solicitado e instó a la Asociación a someterse y agotar el procedimiento administrativo dispuesto en el Artículo 2.110 de la Ley Núm. 107-2020 (Código Municipal de Puerto Rico) para cuestionar la cuantía del pago por concepto de arbitrios de construcción. Plantea, además, que tomaba conocimiento de que en virtud de lo dispuesto en el Artículo 42 de la Ley 9-2013 la Asociación goza de la exoneración del pago de toda clase de contribuciones, arbitrios y derechos, pero que, frente a esa disposición, el Artículo 2.110, inciso (f) de la Ley 107-2020, dispone cuáles son las excepciones que puede conceder el municipio y en éstas no existe ninguna que les obligue a conceder la exención solicitada por AEELA. De igual manera expresa que la interpretación del Municipio es que la exoneración solicitada no procede cuando las obras de construcción son llevadas a cabo por una persona natural o jurídica actuando a favor o en representación de, o por un contrato o subcontrato con una compañía privada.

[…]

27. La ordenanza Núm. 60 Serie 2005-2006 impone un arbitrio de 5% del costo total de la obra para las construcciones, ampliaciones, demoliciones, relocalizaciones y mejoras a cualquier estructura o edificación y realización de excavaciones y movimientos de tierra.

28. De proceder en derecho, el arbitrio de construcción que le corresponde a pagar al contratista asciende a la cantidad de ciento veintinueve mil dólares ($129,000.00).

29. Entre las alegaciones de la parte Demandante expuestas en la demanda, no se alega que estas posean o que estas gocen de un decreto de exención contributiva, conforme a la Ley de Incentivos Contributivos.

30. AEELA no se dedica a la construcción o la demolición y contrató para estos fines una compañía privada especializada.[6]

En consecuencia, el foro apelado concluyó:

En este caso es un hecho cierto que se trata de una obra de construcción dentro de los límites territoriales del Municipio de Guánica. De igual forma, para esta Curia es un hecho indubitado que en este caso la obra pertenece a la AEELA. Ciertamente, la AEELA no se dedica a realizar obras de construcción por lo que se ve en la necesidad de adquirir estos servicios de contratistas independientes. En los hechos de este caso el contratista es un ejecutor de una obra de construcción de la cual el dueño es AEELA. Consideramos meritorio reconocer que los contratistas transfieren el importe de los arbitrios como un costo de construcción a los dueños de la obra. Por lo que, una interpretación contraria a extender los beneficios de la exención al contratista independiente tendría el efecto de frustrar el propósito legislativo de la exención concedida a la AEELA.

De igual manera, somos del pensar que el arbitrio de construcción recae sobre la obra y no sobre la persona que la realiza; y al ser la Asociación una persona jurídica exenta del pago de los arbitrios la dueña de esta; el Municipio no puede requerirle el pago de los arbitrios de construcción a la parte demandante.[7]

En desacuerdo, los apelantes presentaron una *Apelación* en la que alegan que el TPI incurrió en los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, AL RESOLVER QUE LA ASOCIACIÓN DE EMPLEADOS DEL ELA NO ESTÁ OBLIGADA A PAGAR ARBITRIOS DE CONSTRUCCIÓN MUNICIPALES POR UNA OBRA DE DEMOLICIÓN PARA LA CUAL CONTRATÓ A UNA ENTIDAD PRIVADA.

---

[6] *Id.*, págs. 10-14.
[7] *Id.*, págs. 20-21.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE UN CONTRATISTA PRIVADO A QUIEN LA AEELA CONTRATA PARA DEMOLER UNA ESTRUCTURA ESTÁ EXENTA DE PAGAR LOS ARBITRIOS DE CONSTRUCCIÓN ESTABLECIDOS PARA DICHO TIPO DE ACTIVIDAD.

Oportunamente, la apelada presentó su escrito en oposición.

Examinados los escritos de las partes, el expediente y la prueba documental, estamos en posición de resolver.

-II-

A.

La Regla 59.1 de las de Procedimiento Civil, dispone:

El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas.

Independientemente de lo dispuesto en la Regla 37 de este apéndice, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.[8]

El mecanismo procesal de la sentencia declaratoria permite a un tribunal declarar derechos, estados y relaciones jurídicas.[9] Así pues, el resultado de dicho recurso procesal es una decisión judicial sobre cualquier divergencia en la interpretación de una ley.[10] Conviene destacar, que el propósito de la sentencia declaratoria es disipar una controversia sustancial y real entre partes con intereses legales adversos, para de este modo disipar la incertidumbre jurídica existente entre aquellos.[11] En ausencia de un peligro

---

[8] 32 LPRA Ap. V, R. 59.1.
[9] *Mun. de Fajardo v. Srio. de Justicia*, 187 DPR 245, 254 (2012).
[10] *Id.*
[11] *Id.*

potencial contra el promovente, el recurso de sentencia declaratoria es improcedente,[12] amenazando en convertir cualquier dictamen judicial en una determinación abstracta e hipotética. Como en el caso de cualquier acción justiciable, el promovente tiene que demostrar la existencia de un daño claro, palpable, real, inmediato, y preciso, no abstracto o hipotético; que exista nexo causal entre el daño y la causa de acción invocada; y que la causa de acción surja al amparo de la constitución o de una ley.[13]

**B.**

Conforme lee la exposición de motivos, la Asamblea Legislativa aprobó el *Código Municipal de Puerto Rico*, también conocido como Ley Núm. 107-2020, a los fines de integrar, organizar y actualizar las leyes aplicables a la organización, la administración y el funcionamiento de los municipios. El estatuto les reconoce a los municipios la autonomía en el ejercicio de sus poderes jurídicos, económicos y administrativos sobre asuntos relativos al bienestar general de sus habitantes.[14] Entre las facultades conferidas, el gobierno municipal ostenta el poder inherente de fijar impuestos municipales dentro de sus límites jurisdiccionales, sobre materias que no sean incompatibles con la tributación del Estado, y de asumir participación en los recaudos para asegurar recursos y estabilidad fiscal, sujeto a los parámetros establecidos por la

---

[12] *Romero Barceló v. ELA*, 169 DPR 460, 475 (2006).
[13] *Hernández Torres v. Hernández Colón*, et al., 131 DPR 593, 599 (1992). Véase, además, *Rosario Rodríguez v. Rosado Colomer et al.*, 208 DPR 419, 427-428 (2021).
[14] Art. 1.007 de la Ley Núm. 107-2020 (21 LPRA sec. 7012).

Asamblea Legislativa mediante ley o en este *Código*.[15] De modo que, en el desempeño de sus facultades, la legislatura municipal tendrá todas las limitaciones impuestas por la Constitución de Puerto Rico y por la Ley Núm. 600 del 3 de julio de 1950.[16]

Como parte de la autonomía municipal reconocida, el Código Municipal permite a los municipios:

> (c)…**imponer y cobrar contribuciones o tributos, arbitrios de construcción** y otros arbitrios e impuestos, tasas y tarifas razonables **dentro de los límites territoriales del municipio,** compatibles con el Código de Rentas Internas y las leyes del Gobierno de Puerto Rico… **por la construcción de obras y el derribo de edificios...**
>
> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia pública o corporación pública o instrumentalidad del Gobierno estatal o municipal o del Gobierno federal, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso, deberá pagar arbitrio de construcción correspondiente, previo al comienzo de la obra.[17]

Conviene destacar que el *Código Municipal* define una actividad de construcción como el acto de "construir, reconstruir, remodelar, reparar, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, incluyendo, cualquier acto o actividad inherente o directamente relacionada a la formalización y ejecución de estas…".[18] A su vez, define arbitrio de construcción como "[a]quella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes para ese fin, la cual recae sobre

---

[15] *Id.* Véase, además, *Lilly del Caribe v. Mun. de Carolina*, 201 DPR 306, 316-317 (2022); *ECA Gen. Contract. v. Mun. de Mayagüez*, 200 DPR 665, 675 (2018).
[16] Art. 1.038 de la Ley Núm. 107-2020 (21 LPRA sec. 7064).
[17] Art. 2.109 de la Ley Núm. 107-2020 (21 LPRA sec. 7331). (Énfasis suplido).
[18] Art. 8.001 de la Ley Núm. 107-2020 (21 LPRA sec. 8351).

el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción dentro de los límites territoriales del municipio".[19]

### C.

La AEELA es una asociación sin fines de lucro que se originó para estimular el ahorro entre las empleadas, los empleados, las socias y los socios acogidos pensionados, establecer planes de seguro, efectuar préstamos, proveerle a este grupo de personas hogares e instalaciones hospitalarias para el tratamiento médico de ellas y sus familiares y proveer otros beneficios tales como el Centro Vacacional Playa Santa del Caribe.[20] En tanto los servicios que ofrece tienen un impacto social y económico, la Asamblea Legislativa le confirió un carácter compulsorio para los empleados públicos que componen las agencias del gobierno central de Puerto Rico, las corporaciones públicas y los municipios.[21] Lo anterior implica que la AEELA no recibe fondos del gobierno, por el contrario, esta subsiste con las aportaciones de los empleados y las empleadas públicos.

Por otro lado, como parte de los esfuerzos para ratificar la naturaleza privada de la AEELA, establecer las regulaciones propias de una institución privada, garantizar que las socias y los socios retomen el control del gobierno y de la administración de los asuntos operacionales y financieros, a través de la

---

[19] *Id.*

[20] Exposición de motivos de la Ley Núm. 9-2013. Véase, además, Art. 5 de la Ley Núm. 9-2013 (3 LPRA sec. 9004).

[21] Art. 11 de la Ley Núm. 9-2013 (3 LPRA sec. 9010). Véase, además, *Aquino v. Asociación*, 182 DPR 1, 31 (2011) (citando a *First Federal v. Srio. de Hacienda*, 86 DPR 56, 70 (1962)).

Asamblea de Delegados,[22] la Asamblea Legislativa eximió de toda clase de impuestos, derechos y contribuciones, los negocios y las propiedades de la AEELA, así como las que pueda adquirir en el futuro.[23]

Del mismo modo, esta legislación exime a la AEELA de los derechos de aranceles ante el Registro de la Propiedad;[24] de los derechos, sellos y comprobantes de rentas internas relativos a la expedición de certificaciones;[25] de los derechos de examen de las entidades fiscalizadoras;[26] y del cumplimiento con los requisitos de inscripción impuestos por la Ley Núm. 60 de 18 de junio de 1963, según enmendada, conocida como la "Ley Uniforme de Valores"[27].

Finalmente, la Ley Núm. 9-2013 dispone que:

> Toda obligación expedida a favor de la Asociación de Empleados de Gobierno de Puerto Rico, se considerará propiedad de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico. Así también, **tendrá derecho de propiedad sobre todos los fondos y bienes inmuebles, muebles, mixtos, corpóreos e incorpóreos, de cualquier clase que sean y en cualquier sitio radicados, poseídos, explotados o controlados** por la Asociación de Empleados de Gobierno de Puerto Rico. Los Registradores de la Propiedad de Puerto Rico considerarán concluyentemente que toda propiedad inmueble o derecho real inscrito a favor de la Asociación de Empleados de Gobierno de Puerto Rico, será propiedad de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, sin que sea necesario presentar documento alguno en el Registro de la Propiedad de Puerto Rico para acreditar ese hecho.[28]

**-III-**

El apelante aduce que tiene amplia facultad "para imponer contribuciones sobre actividades que constituyan una obra de construcción". Esta facultad es

---

[22] Exposición de motivos de la Ley Núm. 9-2013. Véase, además, Art. 46 de la Ley Núm. 9-2013 (3 LPRA sec. 9045).
[23] Art. 42 de la Ley Núm. 9-2013 (3 LPRA sec. 9041).
[24] Art. 41 de la Ley Núm. 9-2013 (3 LPRA sec. 9040).
[25] Art. 40 de la Ley Núm. 9-2013 (3 LPRA sec. 9039).
[26] Art. 43 de la Ley Núm. 9-2013 (3 LPRA sec. 9042).
[27] Art. 44 de la Ley Núm. 9-2013 (3 LPRA sec. 9043).
[28] Art. 53 de la Ley Núm. 9-2013 (3 LPRA sec. 9052). (Énfasis suplido).

extensiva "a toda obra de construcción" ejecutada por persona natural o jurídica privada "independientemente de que la obra sea realizada para sí, o a favor [*sic*.] en representación de una agencia o corporación pública o instrumentalidad del Gobierno estatal o municipal."

Por otro lado, para el Municipio, la AEELA no está exenta del pago de arbitrios de construcción. Así pues, las exenciones respecto a impuestos, derechos y contribuciones de las cuales se beneficia la apelada, se limitan estrictamente a aquellas actividades reclamadas con los fines que el artículo 42 de la Ley Núm. 9-2013 les asigna.

A esto añade el apelante, que el *Código Municipal* no exoneró a la AEELA del pago de arbitrios de construcción. Peor aún, dicho cuerpo legislativo rechazó expresamente que las exenciones tributarias reconocidas se extendieran a los contratistas independientes que realizan obras para las entidades gubernamentales exentas.

En cambio, la AEELA arguye que como es una persona jurídica exenta del pago de arbitrios, el arbitrio de construcción recae sobre la obra y que, además, es dueña de la obra, por lo que el Municipio no puede requerir el pago de arbitrios al contratista que eligió para los trabajos de demolición del Centro Vacacional Playa Santa del Caribe.

Nos encontramos ante una controversia sobre la interpretación de la Ley Núm. 9-2013. Ante la disyuntiva suscitada, la normativa jurisprudencial establece que las secciones de los estatutos no pueden interpretarse aisladamente, por el contrario, es necesario armonizar el significado de sus distintas

partes e implementar la intención legislativa, de modo que se asegure el resultado que el legislador quiso obtener al crear la ley.[29]

En consideración a lo anterior, la Ley Núm. 9-2023 establece que la AEELA es una organización sin fines de lucro, creada con el propósito de ofrecer beneficios económicos y sociales a los empleados públicos, así como a sus familiares. Con el propósito de alcanzar el objetivo legislativo, la Ley Núm. 9-2013 estableció un esquema amplio de exenciones contributivas, a saber, eximió a la AEELA: (1) de toda clase de impuestos, derechos y contribuciones cuando se trata de los negocios y las propiedades de la AEELA, así como las que pueda adquirir en el futuro; (2) de los derechos de aranceles ante el Registro de la Propiedad; (3) de los derechos, sellos y comprobantes de rentas internas relativos a la expedición de certificaciones; (4) de los derechos de examen de las entidades fiscalizadoras; (5) y del cumplimiento con los requisitos de inscripción impuestos por la Ley Núm. 60 de 18 de junio de 1963, según enmendada, conocida como la "Ley Uniforme de Valores".

Por otro lado, en lo aquí pertinente, el *Código Municipal* define el arbitrio de construcción en los siguientes términos: "[a]quella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción dentro de los límites territoriales del municipio".[30]

---

[29] *Méndez et al. v. Alcalde de Aguadilla*, 151 DPR 853, 858-859 (2000).
[30] Art. 8.001 de la Ley Núm. 107-2020 (21 LPRA sec. 8351).

Ahora bien, para determinar si un municipio tiene facultad para cobrar el arbitrio de construcción hay que examinar el tipo de obra, su localización y a quién pertenece.[31] Además, es menester considerar los siguientes factores: los arbitrios de construcción recaen sobre la obra y no sobre quién la ejecuta,[32] el costo del proyecto define la cuantía de los arbitrios[33] y aunque el contratista pague los arbitrios de construcción, esta suma proviene del dueño de la obra[34].

Por otro lado, conviene destacar que el caso ante nuestra consideración presenta una notable analogía con *Coop. Ahorros Rincón v. Mun. Mayagüez*, 200 DPR 546 (2018). Semejante a la *Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002*, en adelante Ley Núm. 255-2002, objeto de análisis en este último caso, la Ley Núm. 9-2013 se creó con varios propósitos de interés social, tales como estimular el ahorro, establecer planes de seguro, efectuar préstamos, proveer hogares e instalaciones hospitalarias, entre otros. Además, análogo a la Ley Núm. 255-2002, la Ley Núm. 9-2013 estatuyó una abarcadora gama de exenciones contributivas a favor de la AEELA, a saber, la exime: (1) de toda clase de impuestos, derechos y contribuciones cuando se trata de los negocios y las propiedades de la AEELA, así como las que pueda adquirir en el futuro; (2) de los derechos de aranceles ante el Registro de la Propiedad; (3) de los derechos, sellos y comprobantes de rentas internas relativos a la expedición de certificaciones; (4) de los derechos de

---

[31] *Coop. Ahorros Rincón v. Mun. Mayagüez*, 200 DPR 546, 559 (2018); *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 706 (2009).
[32] *Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 675 (2013); *Interior Developers v. Mun. de San Juan*, supra.
[33] *Muñiz Burgos, Inc. v. Mun. de Yauco*, supra.
[34] *Interior Developers v. Mun. de San Juan*, supra.

examen de las entidades fiscalizadoras; (5) y del cumplimiento con los requisitos de inscripción impuestos por la Ley Núm. 60 de 18 de junio de 1963, según enmendada, conocida como la "Ley Uniforme de Valores".

En el pleito de epígrafe, similar a *Coop. Ahorros Rincón v. Mun. Mayagüez, supra,* el apelante alega que la exención solo aplica a los tributos que le impone directamente a la AEELA. Así pues, están exentas las operaciones que la AEELA realiza para alcanzar sus fines institucionales.

Sin embargo, al igual que en *Coop. Ahorros Rincón v. Mun. Mayagüez, supra*, "la dificultad con ese planteamiento es que no toma en cuenta que el monto del arbitrio de construcción que pretende cobrar al contratista se incluye como parte del costo de la obra"[35], por lo que, en última instancia, es la AEELA la que lo pagará.

Conforme a lo previamente expuesto, no podemos acoger el argumento del Municipio de imponer arbitrios de construcción a la AEELA. La posición sugerida por el apelante no se sostiene, en tanto los arbitrios de construcción se fijan conforme al valor de la obra, tomando en cuenta quién es su dueño y aunque los pague el contratista, el costo se transfiere al dueño de la obra. Por consiguiente, la contención del apelante derrotaría la intención legislativa de conceder un esquema amplio de exenciones contributivas a la AEELA para que alcance sus loables fines en beneficio de los empleados públicos.

---

[35] *Coop. Ahorros Rincón v. Mun. Mayagüez*, *supra*, pág. 558.

A la luz de lo antes expuesto, si el Tribunal Supremo de Puerto Rico consideró que para proteger los fines del cooperativismo había que recurrir a un esquema amplio de exenciones tributarias, incluyendo los arbitrios municipales, no encontramos ningún fundamento jurídico o social para no hacer lo propio con la AEELA. Así pues, aunque las exenciones deben interpretarse restrictivamente, "dichas normas no deben ser interpretadas tan restrictivamente como para que pueda quedar frustrada la intención legislativa".[36]

Finalmente, y entrando en el ámbito de la especulación hermenéutica, si el legislador hubiese entendido que para lograr los fines de la AEELA había que imponer el pago de arbitrios municipales, lo hubiese declarado expresamente en el Código Municipal de 2020.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[36] *Interior Developers v. Mun. de San Juan*, *supra*, pág. 707.